UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

LARRY BRIAN SHELTON, #402127      )
                                  )
v.                                )          NO. 2:10-CV-192
                                  )          *Judge Greer*
DAVID SEXTON, Warden              )

## MEMORANDUM OPINION

Larry Brian Shelton ("Shelton" or "petitioner"), who is serving a sentence of life without parole in the West Tennessee State Penitentiary in Henning, Tennessee, brings this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement pursuant to his 2006 Hawkins County, Tennessee, convictions, [Doc. 2]. Warden David Sexton has filed an answer and copies of the state court record, [Docs. 7 and 8, Addenda 1-4]. Petitioner has filed a reply to the Warden's response, [Doc. 15], and the case is ripe for disposition.

The Warden submits, in his response, that Shelton is not entitled to relief from the state court decisions rejecting his claims on the merits, given the deferential standards of review required in 28 U.S.C. § 2254, and, alternatively, that one claim is not cognizable in this habeas proceedings. The Court agrees with the Warden and, for the following reasons, will **DENY** the petition and **DISMISS** this case.

## I. Procedural History

In 2006, Shelton was convicted of first degree felony murder and theft of property valued at less than $500, receiving, for these offenses, a sentence of life without the possibility of parole. His convictions and sentence were affirmed on direct appeal by the Tennessee Court of Criminal Appeals (TCCA) and the Tennessee Supreme Court declined further review. *State v. Shelton*, No. E2006-00541-CCA-R3-CD, 2007 WL 2141538 (Tenn. Crim. App. July 26, 2007), *perm. app. denied*, (Tenn. 2007). Petitioner next applied for post-conviction relief, but the state courts again denied relief. *Shelton v. State*, No. E2009-01031-CCA-R3-PC, 2010 WL 2290778 (Tenn. Crim. App. June 8, 2010), *perm. app. denied*, (Tenn. 2010). Shelton then filed this instant § 2254 petition.

## II. Factual Background

The factual recitation is taken from the TCCA's opinion on direct review of Shelton's convictions. *State v. Graves*, 126 S.W.3d 873 (Tenn. 2003).

On March 31, 2004, the body of the victim was discovered on the floor of his residence. That day Shelton, who was immediately tied to the homicide, gave a statement confessing his involvement in the victim's death, explaining that he had gone to the victim's home to purchase prescription pain medication for his mother. In this statement, Shelton said that, when the victim refused to give him the medication on credit, he became very angry and accused the victim of cheating his mother.[1] He also said that the victim made derogatory comments about his mother, which caused him to become more upset. At this point, the

---

[1] Apparently, the victim held a power of attorney authorizing him to act on behalf of Shelton's mother. [Addendum 1, vol.4, Testimony of Larry Shelton at 243].

victim started to rise from his recliner chair and placed his hand in his pocket, which led Shelton to believe that the victim had a weapon. Petitioner then kicked the victim and the victim fell to the floor. As they scuffled, petitioner proceeded to strike the victim with a candle holder which had fallen to the floor. As the victim lay on the floor, Petitioner took several items from his pocket, including his wallet, keys, and a knife. Petitioner used the knife to stab the victim two or three times in the shoulder and neck, then took money from the victim's safe, along with two baskets containing a number of pill bottles, a cellular telephone, the candle holder, and a staple gun. Petitioner left the residence, taking these items with him. Petitioner showed these items to the officers who conducted a search of his home.

According to forensic testing, the victim's blood was present on the staple gun, the knife, and the trousers Petitioner was wearing when the officers arrived at his home shortly after the homicide. Medical evidence established that the victim had been stabbed 15 times in the neck, chest, abdomen and back, with one of the wounds in his back puncturing his lungs and causing him to bleed profusely into his chest cavity. A stab wound to the victims's neck had opened up the external jugular vein and another punctured his liver, causing internal bleeding. The extensive loss of blood was the cause of the victim's death.

Petitioner testified at trial that he had gone to the victim's house to obtain pain medication for his disabled mother because her personal physician had committed suicide. Shelton explained that the victim reached into his back pocket, which caused him to fear that the victim, who often carried a pistol, was armed. Shelton further explained that he had only

opened the victim's safe to get his mother's records. Shelton also denied stabbing the victim more than three times. Finally, petitioner characterized the taking of the victim's wallet as retribution: "I just kind of went off and took his billfold and showed him I could be able to rule, too, show him I had a little power. He was doing me dirty, and I figured I'd just do him dirty."

Likewise testifying at trial was a clinical psychologist who specialized in clinical neuropsychology and forensic psychology. This expert related that petitioner's intelligence quotient score was 67, which placed him in the mildly retarded range of intellectual functioning. The psychologist diagnosed petitioner as a schizophrenic and also as having a mixed personality disorder with passive-aggressive, dependent, and depressive features. In the expert's opinion, the fatal assault had been caused by Shelton's incorrect perception of the victim's action in rising from his chair, which Petitioner interpreted to be threat to his own physical safety and had responded in a way which no one else would have responded.

### III. Discussion

Petitioner's habeas corpus application contains six grounds for relief. Those grounds are: 1) that the convicting evidence was insufficient evidence; 2) that the trial court committed an evidentiary error; 3) that his conviction was obtained pursuant to an illegal search and seizure; 4) that evidence illegally obtained should have been suppressed; 5) that his sentence was illegal; and 6) that he received ineffective assistance of counsel. Respondent, in the main, argues that the grounds were adjudicated in state court and that the

4

state court's resolution cannot be disturbed under the deferential standards of review in § 2254(d).

## A.  Standards of Review

Under 28 U.S.C. § 2254(d), a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies that principle to the particular facts of the case.  *Id.* at 407.  The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong.  *Id.* at 411.

Findings of fact which are sustained by the record are entitled to a presumption of correctness, unless a petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B. The Claims**

The Court addresses each claim in order.

1. <u>Insufficient Evidence</u>

Shelton challenges the sufficiency of the evidence supporting his conviction for felony murder, arguing that the stabbing death of the victim occurred because of anger which erupted during minor drug dealing and that neither anger nor drug dealings are felonies upon which to base a felony murder offense. Petitioner further argues that the theft in this case occurred as an afterthought and that "there is no felony murder where the felony occurs as an afterthought following the killing," [Doc. 2, Pet. at 3].

In his reply to the Warden's answer, Petitioner fleshes out his claim, maintaining that he stabbed the victim because the victim provoked him by causing petitioner to believe that the victim was armed, was going to pull from his pocket a gun or some weapon, and was going to use it to kill him. Acting upon this belief and in self-protection, Shelton kicked the victim, who fell to the floor, whereupon Shelton beat him with a candle holder, stabbed him two or three times with a knife petitioner had pulled from the victim's trouser pocket, and left the victim's home while the victim was still alive.

Petitioner claims that he is mentally retarded, never intended to kill the victim, and begged the victim to sell him $7 pain pills for his mother for $2, with the balance to be paid later. Citing to *Atkins v. Virginia*, 122 S. Ct. 2242 (2002), for the proposition that mentally retarded defendants are less culpable than those who are not, petitioner suggests that, as a

mentally deficient criminal accused, he should have been charged with voluntary manslaughter or, at most, with second degree murder, and not first degree felony murder.

As noted, respondent argues that the state courts' resolution of the claim may not be disturbed under § 2244(d)'s review standards because those courts did not unreasonably determine the facts nor unreasonably apply the relevant Supreme Court precedent.

In the TCCA, petitioner focused his insufficient-evidence attack on the State's alleged failure to prove that the homicide was in the perpetration of, or the attempt to perpetrate, a theft. The state appellate court began its analysis by examining the evidence against petitioner in the context of the elements of each offense.

The statute in effect at the time of petitioner's crime defined first degree murder, as relevant here, as a "killing of another committed in the perpetration of or attempt to perpetrate any ... theft." *See* Tenn. Code Ann. § 39-13-202(a)(2) (2006). The theft statute provided that "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *See* Tenn Code. Ann. § 39-14-103.

The TCCA then pointed to the evidence which showed that petitioner entered the victim's home, struggled with the victim, struck him with a candle holder, then stabbed him with the knife he had taken from the victim. The stabbing lacerated blood vessels in the victim's lungs, liver and neck—wounds which resulted in the victim's bleeding to death. Petitioner testified that, during the struggle, but before he began stabbing the victim, he removed items from the victim's pockets, including a billfold, keys, and the knife. Following

the stabbing and beating of the victim, who was bleeding but alive, petitioner went into the bedroom to get the victim's safe and loaded it, the victim's personal effects, and a basket of pill bottles in petitioner's car and drove away.

In addressing the specific issue raised by petitioner, the TCCA observed that Tennessee law "did not require that the commission of the predicate felony necessarily precede the murder to support a felony murder conviction" and that the murder could "precede, coincide with, or follow the felony and still be considered as occurring in the perpetration of the felony offense, so long as there is a connection in time, place, and continuity of action." The state court noted, however, that the intent (i.e., the intent to commit the underlying felony), must exist prior to or concurrent with the commission of the act causing the death of the victim and that such an inference reasonably could be drawn from a defendant's actions immediately after a killing.

The TCCA then turned to the question as to "whether a rational trier of fact could reasonably infer from the evidence presented that the defendant intended to commit the theft prior to, or concurrently with, the fatal assault." The answer, according to the state court, was "yes." This determination rested on the evidence that petitioner drove to the victim's house with two dollars, with which he bought a Valium tablet and that he became frustrated when the victim refused to furnish pain medication for the victim's mother on credit. The TCCA pointed out inconsistencies between petitioner's pretrial statement and his testimony at trial. In his statement, petitioner related that the struggle commenced when the victim appeared to be reaching into his pocket as he rose from his recliner, whereas at trial,

8

petitioner testified that he kicked the victim and jumped on him on the floor before the victim made any movement toward his pocket.

The state court then iterated the sequence of events, starting with petitioner's drawing from the victim's pocket, among other items, a knife and a billfold which contained cash. Next, petitioner, using a candle holder and a staple gun, battered the victim's head, back and neck. The victim then told petitioner that the safe in his bedroom held cash, but when he would not disclose the combination[2] to the safe, petitioner grew more angry. As the struggle continued, petitioner stabbed the victim with a knife and, as the victim lay bleeding on the floor, retrieved the safe from the bedroom, gathered the victim's belongings, including the basket of prescription medications, and left the victim's house with those items.

The TCCA found this evidence sufficient to support petitioner's felony murder conviction.

The standard which controls this type of claim is found in *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). There, the Supreme Court held that sufficient evidence supports a conviction if, after viewing the evidence and the inferences to be drawn therefrom in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*, at 324. It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Petitioner "bears

---

[2] The pretrial statement reflects that the safe had a keyed lock, not a combination lock, [Addendum 1, vol. 6, Ex. 214], but petitioner testified to both a combination and a key lock, [*Id.*, vol. 4, Shelton"s Testimony at 242-42].

a heavy burden" when insufficiency of the evidence is claimed. *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir.1986).

The TCCA conducted its review based on the standard for evidentiary sufficiency established in *Jackson* and it also cited to *Jackson* in its discussion. The test for a claim of insufficient evidence is, as the state court recognized, that enunciated in *Jackson*. *See Gall v. Parker*, 231 F.3rd 265, 287-88 (6th Cir. 2000). Because the state court, in analyzing the insufficient-evidence claim, applied the principles in *Jackson*, the relevant Supreme Court precedent, this Court can only grant relief if petitioner demonstrates that the application itself was unreasonable or that the decision was based on an unreasonable factual determination.

This Court is satisfied that the evidence was sufficient to satisfy the intent element of felony murder under Tennessee law as the detailed sequence of events showed the petitioner possessed the intent to commit a theft (as defined by state law) either prior to or contemporaneously with the murder and now finds that the state court did not unreasonably apply *Jackson* or unreasonably determine the facts in rejecting petitioner's claim. Thus, petitioner is not entitled to a writ of habeas corpus on this issue.

2. Evidentiary Error

In his second ground for relief, Shelton maintains that the trial court erred by admitting photographs of the victim's stab wounds, which were highly prejudicial to the defense and to which he objected. Shelton raised this issue in the TCCA and that court held that, under Tennessee's evidentiary rules and state court case law, the trial court had not abused its discretion in admitting the challenged evidence.

A state court's rulings on the admission of evidence are only cognizable as habeas corpus claims if they violate a defendant's due process right to a fair trial. *Estelle v. McGuire*, 502 U.S. 62, 70 (1991). To succeed on an challenge to an evidentiary ruling, a petitioner must show that the ruling was so prejudicial that it deprived him of a fair trial. *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994) ("Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."). No showing of this magnitude has been made and thus the claim is not a recognizable ground for habeas corpus relief. *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) ("Otherwise stated, a state court's violation of its own evidentiary law does not, *ipso facto*, provide a basis upon which a federal court may grant habeas relief.").

3. Illegal Search and Seizure

Petitioner alleges, in this claim, that the consent he gave the officers to search his home was illegal because he lacked the capacity, due to his mental state at the time of the search, to make an intelligent decision to consent.

When this issue was presented on direct appeal, the TCCA delineated the lower state court's findings with regard to the search issues. The trial court, after a pretrial hearing, had concluded that petitioner's written consent to search his residence was freely, knowingly, and understandingly given. In so concluding, the trial court had pointed to petitioner's pretrial statement, which immediately preceded his giving consent to the search, in which petitioner had described specific events of that day. As related by the TCCA, the lower state court also

found that, in the confession, petitioner had spoken spontaneously and deliberately.[3] The trial court also determined that the consent to search had been fully explained to the defendant.

The TCCA then discussed the relevant Fourth Amendment jurisprudence, including *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), applied the law to the facts of petitioner's case, and determined that, "despite the evidence of [petitioner's] mental disorders, no evidence really contradicts the trial court's finding that [petitioner] freely and knowingly consented to the search of his home." No relief was granted.

No relief can be granted by this habeas court either because the claim is precluded by the doctrine enunciated in *Stone v. Powell*, 428 U.S. 465 (1976). There, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494. In other words, a habeas petitioner may not seek to raise issues challenging the legality of a search and seizure, if he had a full and fair opportunity to raise the claims in state court and if the presentation of the claims was not frustrated by any failure of the state's corrective processes. *Id*. at 494-95.

A review of the record makes it clear that petitioner had the opportunity to fully and fairly litigate his Fourth Amendment claims in the Tennessee courts. Counsel moved, in the

---

[3]     The transcript of the pretrial hearing shows that the trial court commented that the rapidity of petitioner's speech in giving the statement "shows the spontaneity and a deliberateness that -- or determinations instead of deliberateness -- to tell the story." That comment accords with petitioner's insistence, according to trial counsel's testimony at the post-conviction hearing, to "explain to the jury what had happened and why it happened . . . ." [Addendum 3, vol. 2, T. Tr., Testimony of Greg Eichelman at 48].

trial court, to suppress the consent to search, a full evidentiary hearing was held, and the

motion was denied. This issue then was raised on direct appeal in the TCCA, and that state

court extensively analyzed the claim under Fourth Amendment jurisprudence. *Shelton*, 2007

WL 2141538, at *6-*7.

Therefore, because petitioner had a full and fair opportunity to litigate his claim in the

state courts, the claim is not reviewable in this federal habeas corpus proceeding.

4. Suppression Issue

Petitioner maintains, in his claim, that he is mentally ill and was taking medication to

treat his mental illness—a fact well known to the officers who conducted the illegal interview

with petitioner and obtained his statement, and that the trial court nonetheless allowed the

State to introduce that statement against him at trial. In his reply, petitioner contends that,

as a mentally retarded person, whose full scale I.Q. is 67, he should have been assisted by

counsel before he made a self-incriminatory statement and that the state court's decision to

admit the statement was contrary to or an unreasonable application of clearly established law

involving the Fourth Amendment.

When this claim was carried to the TCCA, the state court first cited to several

Supreme Court cases, including *Bram v. United States*, 168 U.S. 342 (1897), *Miranda v.

Arizona*, 384 U.S. 436 (1966), and *Edwards v. Arizona*, 451 U.S. 477 (1981),[4] as containing

the legal principles governing the claim. It then limned the evidence presented at the pretrial

---

[4] Citing to *Edwards*, 451 U.S. at 481-82, for the rule that the Fifth Amendment right to counsel attaches during custodial interrogation, the TCCA assumed, but did not actually hold, that petitioner was in custody when he gave his statement. *Shelton*, 2007 WL 2141538, at *8.

13

suppression hearing and the pertinent trial court findings, the first of which was the finding that petitioner had evinced the ability to articulate the circumstances surrounding his encounter with the victim and had done so spontaneously and deliberately.[5] An officer who had known petitioner for several years testified that he would not have regarded petitioner as retarded, that petitioner had served as an informer in drug cases on prior occasions and had

even shown the officer how to use a computer, and that petitioner had seemed "normal" during the interview. Another officer testified that he had read to petitioner his *Miranda* rights from a printed card, that petitioner signed the waiver of his right to counsel, and that there was no coercion involved in securing the waiver or the statement. This officer stated that petitioner's appearance and demeanor did not arouse any concern on his part and that, while petitioner was unwilling to have his statement recorded, he was amenable to having the officer write it in longhand. The statement, once completed, was read to and signed by petitioner, with the entire process of interviewing, writing and signing taking two hours.

The TCCA reasoned that petitioner was 45 years old; experienced with dealing with the police; communicated well, despite his mental disorders; did not give the impression of being mentally retarded, in either appearance or demeanor; and appeared "normal" to an officer who knew him well. Also, according to the TCCA, petitioner had manifested skills in computer operation and in caregiving for his mother and young child. Further, the pretrial

---

[5] *See* footnote 3, *supra.*

statement itself was articulate and detailed and petitioner was cooperative with the officers during the statement and the search of his home which followed.   While medications were found in petitioner's system on the date of the statement, those drugs were prescribed and were within low therapeutic limits and there was nothing to suggest that petitioner was chemically impaired at the time of the statement.  The state appellate court concluded that the record supported the lower court's finding that petitioner had waived his Fifth Amendment rights and had voluntarily and knowingly given the statement.

*Miranda* requires that specific warnings be given to a suspect prior to a custodial interrogation, to protect against abridgments of the right against self-incrimination  in the Fifth Amendment. *Miranda*, 384 U.S. at 444.  A suspect must be told that he has a right to remain silent, that his statements may be used against him at a trial, that he has a right to have an attorney present during interrogation, and that he will be appointed an attorney to represent him prior to and during and questioning, if he cannot afford to hire one. *Ibid.* However, that suspect may waive his rights, so long as he does so knowingly, intelligently and voluntarily. *Ibid.*  Whether a waiver is knowing depends upon the suspect's knowledge of the rights he is abandoning and the consequences of his decision to abandon those rights. *Id.* at 475-479.   Voluntariness is determined by an inquiry into the "totality of circumstances," which must show "both an  uncoerced choice and the requite level of comprehension." *Moran v.  Burbine*, 475 U.S. 412, 421 (1986).

Here, the TCCA cited to *Miranda*, its progeny, and other Supreme Court cases to resolve the petitioner's claim of an involuntary and unknowing waiver of his right to counsel

and it used a totality of the circumstances test to determine whether petitioner's will had been overborne so as to render his confession involuntary. *Id.* at 728-29. Thus, the state court's disposition of the *Miranda* claim is not contrary to the pertinent legal principles in Supreme Court cases.

As noted by the TCCA, there was proof that petitioner had had prior dealings with law enforcement in his role as an informant, seemed normal during the interview, did not appear to be mentally retarded or to have any mental deficits which caused any concern to the officers, had shown an officer how to operate a computer, had been cooperative with the officers during and following the statement, and had provided care for his mother and young child. Also, while Shelton was taking medication, the medication had been prescribed for him, was within therapeutic levels, and had not, insofar as the proof showed, caused him to be chemically impaired. And too, petitioner signed a waiver of his *Miranda* rights. Though not conclusive, an explicit written waiver is considered strong evidence that the suspect has voluntarily waived his rights. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

Given the above circumstances, the Court concludes that, in adjudicating this claim, the TCCA did not unreasonably apply the well established law in Supreme Court cases governing *Miranda* rights waivers. *North Carolina v. Butler*, 441 U.S. 369, 374–75 (1979) ("Even when a right as fundamental as that to counsel ... is involved, the question of waiver must be determined on the particular facts and circumstances surrounding that case ....") (citations and internal quotation marks omitted). No relief can be granted with respect to this claim.

16

5. <u>Illegal Sentence</u>

Under Tennessee law, when the death penalty is not sought for a first degree murder conviction, a defendant must be sentenced to life imprisonment. Tenn. Code Ann. § 39-13-204(a) and (f) (2006). At the time of Shelton's sentencing, a sentence of life without parole could only be imposed upon a jury finding of at least one aggravating circumstance which prevails over mitigating circumstances; in Shelton's case, the jury found one such circumstance — that the murder was especially heinous, atrocious or cruel in that it involved torture or depravity of mind (the "HAC"aggravator). Tenn. Code Ann. § 39-13-204(i)(5). Petitioner now contends that this aggravating factor was not proven because there was no showing of torture or serious physical abuse beyond that necessary to cause death, as the victim in his case simply bled to death, without any single fatal wound. Petitioner further contends that felony murder and an enhanced sentence to life without parole were not only illegal, but also were double enhancing and done without a jury.

The TCCA found the evidence for the aggravating circumstance to be sufficient under the standards in *Jackson v. Virginia*, 443 U.S. 307 (1979), *see supra*, section III.B.1, as modified, because, after viewing the evidence and the inferences to be drawn therefrom in the light most favorable to the prosecution, a rational trier of fact could have found the aggravating circumstance beyond a reasonable doubt. In so finding, the TCCA recognized that a jury is afforded substantial discretion in determining a sentence of life in prison without the possibility of parole — a sentence which would be appropriate upon proof beyond a reasonable doubt of at least one aggravating circumstance and which was not otherwise

17

imposed arbitrarily, so as to constitute a gross abuse of that discretion. *Shelton,* 2007 WL 2141538, at *10.

The state appellate court pointed to evidence that petitioner had beaten the victim in the head with a candle holder and a staple gun and stabbed him fifteen times. The TCCA concluded that"[ ]the jury could have reasonably inferred from the medical evidence that, though several stab wounds contributed to the exsanguination of the victim, not all of the wounds were necessary to produce death," and found the sentence supported in the record. *Id.*, 2007 WL 2141538, at *11.

Petitioner's assertion that his sentence was " double enhancing," as the Court interprets the assertion, is a reference to the situation where a defendant convicted of first degree felony murder can receive the death penalty with the underlying crime (typically a felony) as the only aggravating circumstance. First of all, petitioner was convicted of misdemeanor theft, not a felony theft offense. Moreover, the aggravating circumstance was not the theft itself, but the HAC aggravator, which focused on the nature of the murder, not the theft. Furthermore, if this claim is derived from the Tennessee Supreme Court's holding that "when a jury convicts a defendant of capital felony murder, the State may not use the underlying felony as an aggravating circumstance," that holding concerns a state law violation, as respondent asserts, and not one of federal constitutional law. *See, e.g., Strouth v. Colson*, 680 F.3d 596, 600 (6th Cir. 2012).

Shelton's second assertion, to wit, that his sentence was not obtained pursuant to a jury verdict, is contrary to the record. A jury considered proof of both aggravating and mitigating

factors and thereafter found that a sentence of life without the possibility of parole was appropriate.

As to petitioner's principal argument (i.e., that because there was no single fatal wound and because the victim bled to death, there was insufficient proof of "serious physical abuse beyond that necessary to cause death"), the number of times the victim was stabbed and the sheer force necessary to inflict wounds that lacerated blood vessels located in the lungs and liver supports that the victim suffered serious physical abuse beyond that required to result in death.

Recent case law indicates that a habeas petitioner must surmount a high bar under the standard set by the AEDPA. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[A] habeas court must determine what arguments or theories supported or ... could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.*

In view of these recent pronouncements and the " heavy burden" a petitioner carries when claiming insufficient evidence, *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986), the Court finds that petitioner has not borne his burden of showing that the state court unreasonably applied *Jackson*, the seminal Supreme Court precedent on evidentiary insufficiency, or unreasonably determined the facts in finding no merit to petitioner's

challenge to this aggravating circumstance. *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) ("[T]he Supreme Court has very recently made abundantly clear that the review granted by the AEDPA is even more constricted than AEDPA's plain language already suggests.") (citing *Harrington*, 131 S. Ct. at 786). The writ will not issue on this claim.

6.  Ineffective Assistance of Counsel

 Petitioner's final claim is composed of two parts, the first of which is that his trial counsel gave him ineffective assistance by failing to present mitigating facts to the jury through the testimony of mental health professionals in the sentencing phase of the trial. The second part of this ineffective assistance claim charges counsel with failing to discourage petitioner from testifying and to prepare him for that testimony, should he opt to testify.

 In his reply, petitioner reiterates that he is a mentally retarded person, and that (by inference), due to his mental deficits, counsel should have discouraged him from testifying, and, alternatively, should have exercised extra care in preparing a client who has mental deficiencies to testify. Petitioner further claims, citing once again to *Atkins v. Virginia*, 122 S. Ct. 2242 (2002), that as a mentally retarded person, while he is not exempted from criminal sanctions, his personal culpability is diminished. In this vein, petitioner argues that counsel failed to present mitigating facts during sentencing through testimony of psychological experts. He insists that he was simply trying to help his mother, had no criminal history, and wept openly when he heard that the victim had died. Petitioner maintains that, absent counsel's alleged shortcomings, he would have been found guilty of voluntary manslaughter or, at most, second degree murder, and not first degree felony murder.

20

In his answer, the Warden replies that petitioner is not entitled to the writ because he has failed to demonstrate that the TCCA's adjudication of the claim is contrary to or involves an unreasonable application of clearly established federal law or is based on unreasonable factual findings.

### a. The State Court's Findings

This claim was presented in petitioner's post-conviction appeal. The TCCA first observed that, during the post-conviction evidentiary hearing, Shelton had failed to adduce any mitigation evidence which was available to counsel but was not presented to the jury. *Shelton v. State*, 2010 WL 2290778, at *6 (Tenn. Crim. App. June 8, 2010). The state appellate court also pointed out that counsel testified, during that hearing, that Dr. Eric Engum, a psychologist, had testified extensively during the guilt phase of trial, and while counsel acknowledged that he did not call this expert at the sentencing hearing, counsel stated that he had made many references to the expert's testimony during the penalty hearing. The TCCA found it important that the trial court had accredited counsel's testimony, which had established that the expert's conclusions regarding the state of petitioner's mental health had been presented during the trial. Based on this significant detail, the state appellate court determined that petitioner had not proven that "having Doctor Engum repeat those findings during the sentencing phase of the trial would have affected the jury's verdict." *Id.*

As to preparing petitioner for, or discouraging him from, testifying, both counsel and his investigator, in their accredited testimony, stated that they had advised petitioner about what to expect at trial and had informed him that the decision as to whether to testify was his

alone. Counsel further stated that he began preparing petitioner to testify on "day one" because his client indicated at the outset of their relationship that he wanted to tell a jury exactly what had happened at the victim's home. Finally, counsel testified that, during petitioner's testimony, his behavior was appropriate and that he answered the questions posed to him.

The TCCA determined that petitioner had not shown prejudice with respect to counsel's first alleged shortcoming (i.e., expert testimony at sentencing), nor a deficient performance involving counsel's second alleged error.

### b. Law and Analysis

Defendants have a right to the effective assistance of counsel at trial. *Strickland v. Washington*, 466 U.S. 668 (1984). To show ineffective assistance, a prisoner must demonstrate that: 1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and 2) it resulted in prejudice to petitioner. *Id*. at 687. A court considering ineffectiveness claims must observe certain guidelines. In assessing counsel's performance, a court must presume, in view of the circumstances, that counsel's questioned actions might have been sound strategic decisions. *Id*. at 689. The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct occurred under the circumstances of the particular case. *Ibid*. Only in those instances where the challenged actions are "outside the range of professionally competent assistance" will counsel's performance be considered constitutionally deficient. *Id*. at 690. In sum, a petitioner must

show counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment in order to establish deficient performance. *Id*. at 689.

In addition to a deficient performance, a petitioner must also show actual prejudice. A petitioner will satisfy the prejudice prong of the *Strickland* test if he shows there is a reasonable probability, but for counsel's unprofessional errors, that the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid.*

Since the state court decided the ineffectiveness claim on its merits, that decision must be reviewed under the deferential standards of §2254(d). Because the state court cited to *Strickland* as the source of the relevant legal rule, its adjudication of the ineffective-assistance claim was not contrary to clearly established federal law. *Williams v. Taylor*, 529 U.S. 362, 406 (2002) (identifying *Strickland* as controlling legal authority for deciding ineffective assistance claims). The question for this Court is whether the state court unreasonably applied *Strickland* to the facts of petitioner's case or whether those factual findings were unreasonable.

The TCCA held, apropos of counsel's first purported error (failure to present Dr. Engum's live testimony at sentencing), that petitioner had not demonstrated that calling this expert at sentencing to repeat the findings to which he had testified earlier would have affected the jury's verdict. Thus, in effect, the TCCA found that no prejudice had been shown.

23

To prevail on a claim of prejudice, a petitioner must show that counsel's errors "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693. Absent proof that, had Dr. Engum reiterated the conclusions to which he had testified at the guilt phase of trial, there is a reasonable probability of a different outcome at sentencing, the TCCA did not unreasonably apply *Strickland* in determining that there was no prejudice.

In regard to counsel's second alleged error (i.e., the failure to prepare petitioner to testify or discourage him from testifying), counsel testified that he had advised petitioner that whether to testify was a decision which was his alone. The TCCA held that this advice was legally correct and that giving it did not amount to a deficient performance on the part of counsel. Furthermore, counsel testified that he had begun preparing his client to testify from the very first day because of petitioner's expressed desire to explain to the jury what had occurred at the victim's home, that he had described what he could expect to ensue at the trial, and that petitioner's conduct while he was on the stand was proper. The trial court found this testimony credible.

Credibility findings by the state court are entitled to special deference. See e.g., *Patton v. Yount*, 467 U.S. 1025, 1038 (1984); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254 gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.") (pre-AEDPA case). Thus, this Court defers to the state court's credibility determinations of a witness whose demeanor has been observed by that court, unless petitioner demonstrates the state credibility determinations are not supported by the record. *See Rice v. Collins*, 546 U.S. 333, 342 (2006)

24

("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial's court's credibility determination."). The state court's credibility determinations are supported by the record and no clear and convincing evidence has been adduced to refute those determinations.

Therefore, accrediting counsel's testimony that he prepared petitioner to testify necessarily shows that counsel accomplished that which petitioner claimed that counsel should have done but did not attempt to do. In rejecting petitioner's second claim of ineffective assistance, the TCCA did not unreasonably apply *Strickland* either.

A writ of habeas corpus will not issue based on petitioner's claim of ineffective assistance of counsel.

## IV. Conclusion

For the above reasons, this *pro se* state prisoner's application for a writ of habeas corpus will be **DENIED** and this case will be **DISMISSED**.

## V. Certificate of Appealability

One final matter remains for discussion: whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. *See* 28 U.S.C. § 2253(c)(1). Petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a constitutional right; he makes such a showing by demonstrating that reasonable jurists might question the correctness of the Court's procedural rulings or its assessment of his constitutional claims. *See Slack v. McDaniel,* 529 U.S. 473 (2000). The Court has found that one claim and parts of other claims are not cognizable and that the remaining claims which

were adjudicated in state court would not support habeas corpus relief because, after an examination of the state court decisions, the record, and the relevant governing law in Supreme Court cases, those decisions did not run contrary to well established federal law, did not reflect that the state courts had unreasonably applied that law, and did not demonstrate that the state courts had disposed of those claims by unreasonably determining the facts offered to those courts.

The Court now finds that reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve encouragement proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), and will **DENY** issuance of a COA. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

A separate order will enter.


**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE